Case No. 2016-2380

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

CHEMTALL, INC.,
Plaintiff-Appellant,

v.

THE UNITED STATES,
Defendant-Appellee.

Appeal from the United States Court of International Trade
Case No. 12-00079, Judge Leo M. Gordon

# BRIEF OF DEFENDANT-APPELLEE

CHAD A. READLER
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

CLAUDIA BURKE
Assistant Director

ERIC E. LAUFGRABEN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-7995
Fax: (202) 514-8624
Email: Eric.E.Laufgraben@usdoj.gov

Attorneys for Defendant-Appellee

OF COUNSEL:

PAULA S. SMITH
Attorney
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

March 23, 2017

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

STATEMENT OF RELATED CASES ..... ix

STATEMENT OF THE ISSUE ..... 1

STATEMENT OF THE CASE ..... 1

I. Organization Of Heading 2924 ..... 2

II. Chemical Background ..... 4

A. Amide Function Compounds ..... 4

B. "Amides" Are A Subset Of Amide Function Compounds ..... 6

C. ATBS Is An Amide Function Compound, But Not An "Amide" ..... 8

D. ATBS Is A Derivative Of An Amide ..... 8

III. Procedural History ..... 11

STANDARD OF REVIEW ..... 15

SUMMARY OF THE ARGUMENT ..... 15

ARGUMENT ..... 19

I. Legal Framework ..... 20

II. The Trial Court Correctly Classified ATBS Under Subheading 2924.19.80, HTSUS (Other) ..... 21

A. ATBS Is Not An "Amide" Pursuant To Subheading 2924.19.11, HTSUS (Amides) ..... 21

B. Because ATBS Is A Derivative Of An Amide, Chapter 29, Subheading Note 1 Requires Its Classification Under The Residual "Other" Subheading, 2924.19.80, HTSUS (Other) ..... 24

III. Chemtall Fails To Show That The Trial Court's Construction Of Subheading 2924.19.11, HTSUS (Amides) Was Erroneous ..... 27

A. The Trial Court Properly Relied Upon Dictionaries And Chemistry Textbooks To Construe Subheading 2924.19.11, HTSUS (Amides)....................................................29

B. The Explanatory Notes Support The Trial Court's Construction Of Subheading 2924.19.11, HTSUS (Amides)...32

C. Dr. Storey's July 16, 2011 Declaration Stated That $R_1$, $R_2$, And $R_3$ Are "Independently Hydrogen, Alkyl Or Aryl" ..........34

D. No Dictionary, Textbook Or Treatise Cited By Chemtall States That Amides Attach "Substituted Hydrocarbyl"............35

E. Three Patents That Reference "Substituted Hydrocarbyl" Fail To Establish A Common And Commercial Meaning Of "Amides" That Is Different From Dictionary And Textbook Definitions..........................................................................38

F. Neither Lab Report HT20101734 Nor Its Backup Materials Supports Chemtall's Argument That Subheading 2924.19.11 (Amides) Refers To Compounds Attaching "Substituted Hydrocarbyl". ..........................................................................40

G. Chemtall's Definition Of "Amides" Constitutes A Term Of Art .............................................................................42

IV. Chemtall's Reliance On Various Exemplars—All Of Which Are Identified By Name Under A Separate Group Of Subheadings—Fails To Show That The Trial Court's Construction Of Subheading 2924.19.11, HTSUS (Amide) Was Erroneous ...................................43

A. The Exemplar Compounds Cited By Chemtall Illuminate No Distinction Between Subheading 2924.19.11, HTSUS (Amides) And Subheading 2924.19.80, HTSUS (Other).........45

B. The Exemplar Compounds Listed In The Explanatory Notes Under "Cyclic Amides" Illuminate No Distinction Between Subheading 2924.19.11, HTSUS (Amides) and Subheading 2924.19.80, HTSUS (Other).....................................................48

C. Chemtall's Attempt To Analogize ATBS To Various Cyclic Amide Function Compounds Is Flawed Because The HTSUS Does Not Contain An Eight-Digit Subheadings For "Amides" Under "Cyclic Amides (Including Cyclic Carbamates) And Their Derivatives; Salts Thereof" .............................................49

V. The Trial Court Properly Rejected Chemtall's Erroneous Argument That Non-Statutory Statistical Suffixes Require Classification Of ATBS Under Subheading 2924.19.11, HTSUS (Amides) ....................50

CONCLUSION.......................................................................................................53

TABLE OF EXEMPLAR COMPOUNDS CITED IN CHEMTALL'S BRIEF .....54

# TABLE OF AUTHORITIES

## Cases

*ABB, Inc. v. United States*,
421 F.3d 1274 (Fed. Cir. 2005) ....................20

*Alcan Food Packaging (Shelbyville) v. United States*,
771 F.3d 1364 (Fed. Cir. 2014) .................... 20, 21

*Bruesewitz v. Wyeth LLC*,
131 S. Ct. 1068 (2011) ....................25

*Campbell v. Merit Sys. Prot. Bd.*,
27 F.3d 1560 (Fed. Cir. 1994) ....................43

*Drygel, Inc. v. United States*,
541 F.3d 1129 (Fed. Cir. 2008) ....................22

*E.M. Chem. v. United States*,
923 F. Supp. 202 (Ct. Int'l Trade 1996) ....................52

*E.T. Horn Co. v. United States*,
367 F.3d 1326 (Fed. Cir. 2004) .................... 24, 25, 29, 50

*Faus Grp., Inc. v. United States*,
358 F. Supp. 2d 1244 (Ct. Int'l Trade 2004) ....................43

*Guess? Inc. v. United States*,
944 F.2d 855, 857 (Fed. Cir. 1991) ....................15

*Honda of Am. Mfg., Inc. v. United States*,
607 F.3d 771 (Fed. Cir. 2010) .................... 20, 24

*Kahrs Int'l, Inc. v. United States*,
791 F. Supp. 2d 1228 (Ct. Int'l Trade 2011) ....................29

*Len-Ron Mfg. Co. v. United States*,
334 F.3d 1304 (Fed. Cir. 2003) .................... 29, 31

*Lonza, Inc. v. United States*,
960 F. Supp. 374 (Ct. Int'l Trade 1997) .................... 24, 25

*Lynch v. Alworth-Stephens Co.*,
267 U.S. 364 (1925)..........43

*Lynteq, Inc. v. United States*,
976 F.2d 693 (Fed. Cir.1992) .......... 15, 22

*Mead Corp. v. United States*,
283 F.3d 1342 (Fed. Cir. 2002) ..........30

*Millenium Lumber Distrib. Ltd. v. United States*,
558 F.3d 1326 (Fed. Cir. 2009) ..........20

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998) ..........51

*Park B. Smith, Ltd. v. United States*,
347 F.3d 922 (Fed. Cir. 2003) ..........20

*Russell Stadelman & Co. v. United States*,
242 F.3d 1044 (Fed. Cir. 2002) ..........39

*Samsung Int'l, Inc. v. United States*,
887 F. Supp. 2d 1330 ..........29

*Sigma-Tau Healthsci., Inc. v. United States*,
838 F.3d 1272 (Fed. Cir. 2016) ..........29

*United States v. Florea & Co.*,
25 C.C.P.A. 292 (C.C.P.A. 1938)..........29

*Vanetta U.S.A., Inc. v. United States*,
306 F. Supp. 2d 1313 (Ct. Int'l Trade 2004) ..........25

## Statutes and Regulations


19 U.S.C. § 1202 .......................................................................................29

Harmonized Tariff Schedule of the United States

General Rules of Interpretation (GRI)

GRI No. 1 ...........................................................................................19

GRI No. 6 ...........................................................................................53

Chapter 29

Subheading Note 1 ............................................................... passim

Heading 2924 ........................................................................ passim

Subheading 2924.11.00..........................................................3

Subheading 2924.12.00..........................................................3

Subheading 2924.19.................................... 3, 18, 24, 25, 45, 49

Subheading 2924.19.11.................................................. passim

Subheading 2924.19.80.................................................. passim

Subheading 2924.23.10.................................................... 46, 54

Subheading 2924.29.01.................................................... 46, 54

Subheading 2924.29.20.................................................... 46, 54

Subheading 2924.29.23.................................................... 46, 55

Subheading 2924.29.31.............................................. 46, 55, 56

Subheading 2924.29.62.................................................... 46, 56

## Explanatory Notes

World Customs Organization, Explanatory Notes (4th ed. 2007)

Chapter 29, Chapter Note 4 ....................26

Explanatory Note to 29.24 .................... 32, 33, 47, 48

## Legislative History

H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), 1988 U.S.C.C.A.N. 1547, 1582 ....................22

## Dictionaries, Textbooks and Treatises

73 Am. Jur. 2d Statutes § 147 ....................26

Functional Groups in Organic Chemistry, *available at* http://www.compoundchem.com/wp-content/uploads/2014/01/Organic-Functional-Groups-Update.pdf (last visited Mar. 23, 2017) ....................5

*Funk & Wagnalls Standard College Dictionary* (1973) .................... 9, 26

David J. Hart, *Organic Chemistry: A Short Course* (13th ed. 2012) ......... 36, 37, 38

*Hawley's Condensed Chemical Dictionary* (13th ed. 1997) .................... 6, 7

*McGraw-Hill Concise Encyclopedia of Chemistry* (2004) .................... 6, 22

*McGraw-Hill Dictionary of Scientific and Technical Terms* (5th ed. 1994)........ 6, 7

*Merriam-Webster Medical Dictionary* (Online ed. 2017) ....................46

*Oxford English Dictionary* (Online ed. 2014) .................... 9, 26

OChemPal, *available at* http://www.ochempal.org/index.php/alphabetical/a-b/amide/ (last visited Mar. 23, 2017) ........ 25, 48

T.W. Solomons and Craig Fryhle, *Organic Chemistry* (10th ed. 2011)........... 35, 36

Andrew Streitweiser, *et al.*, *Introduction to Organic Chemistry* (4th ed. 1992) ........ 6, 22, 31

L.G. Wade Jr., *Organic Chemistry* (6th ed. 2006) ........................... 5, 22, 31, 32, 35

L.G. Wade Jr., *Organic Chemistry* (8th ed. 2013) ........................................... 32, 35

*Webster's New Int'l Dictionary* (2d ed. 1942).................................................... 8, 26

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, counsel for defendant-appellee, the United States, states that he is unaware of any other appeal in or from this action that was previously before this Court or any other appellate court under the same or similar title.

Counsel for the United States states that he is aware of six cases currently pending in the Court of International Trade that will be affected by the Court's decision in this case.

1. *Chemtall, Inc. v. United States*, No. 12-00358 (Ct. Int'l Trade filed Nov. 13, 2012);

2. *Chemtall, Inc. v. United States*, No. 13-00158 (Ct. Int'l Trade filed Apr. 19, 2013);

3. *Chemtall, Inc. v. United States*, No. 14-00065 (Ct. Int'l Trade filed Mar. 7, 2014);

4. *Chemtall, Inc. v. United States*, No. 15-00057 (Ct. Int'l Trade filed Mar. 3, 2015);

5. *Chemtall, Inc. v. United States*, No. 16-00028 (Ct. Int'l Trade filed Feb. 12, 2016); and

6. *Chemtall, Inc. v. United States*, No. 16-00176 (Ct. Int'l Trade filed Sept. 7, 2016).

The six case listed above, like this case, were all filed by plaintiff-appellant Chemtall, Inc., and all challenge the classification of the same chemical compound, acrylamido tertiary butyl sulfonic acid (ATBS) pursuant to

the Harmonized Tariff Schedule of the United States. All such cases have been suspended pending the resolution of this matter, which has been designated as a "test" case.

Case No. 2016-2380

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

CHEMTALL, INC.,
Plaintiff-Appellant,

v.

THE UNITED STATES,
Defendant-Appellee.

Appeal from the United States Court of International Trade
Case No. 12-00079, Judge Leo M. Gordon

## STATEMENT OF THE ISSUE

Whether a chemical compound—acrylamido tertiary butyl sulfonic acid (ATBS)—was correctly classified under subheading 2924.19.80 (*Carboxyamide function compounds; amide function compounds of carbonic acid: Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof: Other: Other*) of the Harmonized Tariff Schedule of the United States (HTSUS).

## STATEMENT OF THE CASE

This appeal concerns the proper classification of ATBS under two competing subheadings of Heading 2924, namely: 2924.19.11, HTSUS (Amides); and 2924.19.80, HTSUS (Other). The trial court agreed with the United States that the chemical composition of ATBS requires its classification under 2924.19.80 (Other), at a 6.5 percent duty rate, rather than 2924.19.11, HTSUS (Amides) at a

3.7 percent duty rate. Specifically, because ATBS is a derivative of an amide, and the tariff schedule requires the classification of derivatives under a residual subheading "Other," the trial court classified ATBS under 2924.19.80, HTSUS (Other). Appx0011-12.

I. <u>Organization Of Heading 2924</u>

Heading 2924 applies to "carboxyamide-function compounds; amide-function compounds of carbonic acid." 2924, HTSUS. An excerpt from Heading 2924 appears below:

| | | | | |
|---|---|---|---|---|
| 2924 | | Carboxyamide-function compounds; amide-function compounds of carbonic acid: | | |
| | | Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof: | | |
| 2924.11.00 | 00 | Meprobamate (INN) . . . . . . . . . . . . . . . . . . . . . . . . . | kg . . . . . . | Free |
| 2924.12.00 | 00 | Fluoroacetamide (ISO), monocrotophos (ISO) and phosphamidon (ISO) . . . . . . . . . . . . . . . . . . . . | kg . . . . . . | 3.7% |
| 2924.19 | | Other: | | |
| 2924.19.11 | | Amides . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . | 3.7% 107/ |
| | 10 | Acrylamide . . . . . . . . . . . . . . . . . . . . . . . . . | kg | |
| | 20 | Dimethylformamide . . . . . . . . . . . . . . . . . . . | kg | |
| | 30 | Methacrylamide . . . . . . . . . . . . . . . . . . . . . . | kg | |
| | 50 | Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | kg | |
| 2924.19.80 | 00 | Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | kg . . . . . . | 6.5% 108/ |
| | | Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof: | | |
| 2924.21 | | Ureines and their derivatives; salts thereof: | | |
| | | Aromatic: | | |
| | | Pesticides: | | |
| 2924.21.04 | 00 | 3-(*p*-Chlorophenyl)-1,1-dimethylurea (Monuron) . . . . . . . . . . . . . . . . . . . . . . . | kg . . . . . . | 6.5% |

Appx1233.

Congress organized subheadings under Heading 2924 into two categories: (1) "Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof;"[1] and (2) "Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof."[2] Appx1233. Congress then categorized "[a]cyclic amides (including acyclic carbamates) and their derivatives; salts thereof" into three, separate six-digit subheadings. Two subheadings describe specific compounds (2924.11.00 and 2924.12.00); the third subheading, 2924.19, provides for all "other" acyclic amides (including acyclic carbamates) and their derivatives, and their salts. Appx1233. Under 2924.19 (Other), Congress further provided a series of two subheadings: 2924.19.11, HTSUS (Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof: Other: **Amides**) and 2924.19.80, HTSUS (Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof: Other: **Other**). Appx1233.

Congress also directed that within any one heading under Chapter 29, "derivatives of a chemical compound . . . are to be classified in the same subheading as that compound (or group of compounds) *provided that* . . . there is

---

[1] *See* HTSUS 2924.11, 2924.12 and 2924.19 (Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof). Appx1233.

[2] *See* 2924.21, 2924.23, 2924.24, 2924.29, HTSUS (Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof). Appx1233.

no residual subheading named 'Other' in the series of subheadings concerned." Appx1230 (Subheading Note 1, Chapter 29, HTSUS (emphasis added)).

The parties agree that ATBS belongs under Heading 2924 and under subheading 2924.19 (Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof: Other). Chemtall's suit concerns the proper classification of ATBS at the eight-digit subheading level at 2924.19.11, HTSUS (Amides) or 2924.19.80, HTSUS (Other).

> Carboxyamide-function compounds; amide function compounds of carbonic acid:
>
> > Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof;
>
> * * *
>
> Other 2924.19
>
> Amides 2924.19.11
> Other 2924.19.80

The trial court agreed with the United States that because ATBS is a derivative of an amide, but not an amide itself, the tariff schedule requires its classification under 2924.19.80, HTSUS (Other). Appx0010-12.

## II. Chemical Background

### A. Amide Function Compounds

ATBS is an amide function compound, meaning that it incorporates an amide functional group. Chemtall Br. at 8. An amide functional group consists of

a double bond (=) between a carbon (C) atom and an oxygen (O) atom, and a single bond (–) between the carbon (C) and nitrogen (N) atoms. *Id.*




amide functional group

Appx1361 (Chemtall's Responses to U.S. Discovery Requests (Chemtall Resp.), Interrogatory No. 5).

The presence of the amide functional group is the signature feature of all compounds that fall under Heading 2924. Appx0006; Appx1430 (Storey Tr. at 68: 6-10).

Classification of amide function compounds at the subheading level depends on the substituent groups attached at $R_1$ (attached to carbon) and $R_2$ and $R_3$ (attached to nitrogen). Appx0006; Chemtall Br. at 9. R typically represents a hydrogen atom or a group composed solely of hydrogen and carbon. *See* Functional Groups in Organic Chemistry ("'R' represents a hydrocarbon group or hydrogen") *available at* http://www.compoundchem.com/wp-content/uploads/2014/01/Organic-Functional-Groups-Update.pdf (last visited March 17, 2017); Appx1626 (L.G. Wade Jr., *Organic Chemistry* 125 (8th ed. 2013) (noting that alkyl groups are symbolized by R)).

B. “Amides” Are A Subset Of Amide Function Compounds

Although all compounds under Heading 2924 contain the amide functional group, the compounds classifiable at the eight-digit sub-heading level under *Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof: Other: Amides* comprise a subset of such compounds. *Compare* Heading 2924, HTSUS *with* 2924.19.11, HTSUS (Amides). Unlike the broader category of amide function compounds governed by Heading 2924, “Amides” under 2924.19.11, HTSUS refer to compounds that only attach hydrogen atoms, alkyl groups or aryl groups. *See, e.g.*, Appx0255 (Andrew Streitweiser, *et al*., *Introduction to Organic Chemistry* 511 (4th ed. 1992) (“Amides, $RCONH_2$, are compounds in which the hydroxyl group is replaced by an amino group. The nitrogen of the amino group may bear zero, one, or two alkyl groups”)); *see also* Appx1799 (Amide, *McGraw-Hill Concise Encyclopedia of Chemistry* (2004) (“A derivative of a carboxylic acid with general formula $RCONH_2$, where R is hydrogen or an alkyl or aryl radical”)).

An alkyl group or alkyl radical is a group that results from removal of a hydrogen atom from an acyclic, saturated, hydrocarbon chain, and may be represented in a chemical formula by R–. Appx1329 (Alkyl, *McGraw-Hill Dictionary of Scientific and Technical Terms* (5th ed. 1994)). *See also* Appx1335 (Alkyl, *Hawley’s Condensed Chemical Dictionary* (13th ed. 1997) (“A paraffinic hydrocarbon group which may be derived from an alkane by dropping one

hydrogen from the formula. Examples are methyl, $CH_3$-, ethyl, $C_2H_5$-; propyl, $CH_3CH_2CH_2$-, isopropyl $(CH_3)_2CH_3$-. Such groups are often represented in formulas by the letter R…” )); Appx1340 (Alkyl, *Random House Dictionary of the English Language* (2d ed. 1973) (“any of a series of univalent groups of the general formula $C_nH_{2n+1}$, derived from aliphatic hydrocarbons, as the methyl group, $CH_3$-, or ethyl group, $C_2H_5$-”)).

An aryl group or aryl radical refers to a group composed of carbon and hydrogen arranged in a ring structure, derived from an aromatic hydrocarbon by removal of one hydrogen. Appx1330 (Aryl, *McGraw-Hill Dictionary of Scientific and Technical Terms* (5th ed. 1994)). *See also* Appx1336 (Aryl, *Hawley’s Condensed Chemical Dictionary* (13th ed. 1997) (“A compound whose molecules have the ring structure characteristic of benzene, naphthalene, phenanthrene, anthracene and similar molecules, (i.e., either the 6-carbon ring of benzene or the condensed 6-carbon rings of the other aromatic derivatives). For example, an aryl group may be phenyl $C_6H_5$ or naphthyl $C_{10}H_6$. Such groups are often represented in formulas by ‘R’”)).

Accordingly, whether the substituent groups consist of a hydrogen atom, aryl group or an alkyl group, “amides”—in contrast to all “amide function compounds”—necessarily attach either a hydrogen atom or a hydrocarbon group in those positions. Appx0255; Appx1322; Appx1796.

C. ATBS Is An Amide Function Compound, But Not An "Amide"

Like all amide function compounds, ATBS incorporates the amide functional group. *See* Chemtall Br. at 10. ATBS attaches an ethenyl ($H_2C=CH$-) group at $R_1$, a hydrogen atom (H-) at $R_2$, and 1-sulfonic acid-2-methylprop-2-yl functional group ($C_4H_9SO_3$-) at $R_3$. Appx0865-66 (Chemtall Resp., Interrogatory No. 13). The chemical composition of ATBS is depicted below:




ATBS

Chemtall Br. at 10. *See also* Appx0864-66 (Chemtall Resp., Interrogatory Nos. 12, 13). Although ATBS falls within the universe of amide function compounds, the presence of the sulfonic acid functional group at $R_3$ indicates that ATBS does not fall within the subset of "amides," but constitutes a derivative of an amide.

D. ATBS Is A Derivative Of An Amide

In organic chemistry, the term "derivative" refers to "[a] substance so related to another substance by modification or partial substitution as to be regarded as theoretically derived from it, even when not obtainable from it in practice; thus amino compounds are derivatives of ammonia." Appx1458 (Derivative, *Webster's*

*New Int'l Dictionary of the English Language* (2d ed. 1941)). *See also* Appx1454 (Derivative, *Funk & Wagnalls Standard College Dictionary* (4th ed. 1973) ("3. *Chem*. A compound formed or regarded as being formed from a specified substance or another compound, usually by partial substitution")); Appx1464 (Derivative, *Oxford English Dictionary* (Online ed. 2014), *available at* http://www.oed.com/view/Entry/50609 (last visited Mar. 23, 2017) ("5. *Chem*. A compound obtained from another, e.g., by partial replacement")).

Comparing ATBS with an acyclic amide, acrylamide, illustrates this principle. Both acrylamide and ATBS both contain an amide functional group, along with an ethenyl group at $R_1$ and a hydrogen atom at $R_2$. Given the substitution of the hydrogen atom attached at $R_3$ in acrylamide with a radical that contains a sulfonic acid group, with the amide functional group remaining intact, ATBS is a derivative of acrylamide. During the proceedings below, Chemtall depicted the substitution that renders ATBS a derivative of a specific amide: acrylamide ($C_3H_5NO$).

<u>Acrylamide:</u>




Appx0867 (Chemtall Resp., Interrogatory No. 14).

Elimination of the hydrogen at $R_3$ results in the monovalent chemical group, "acrylamido:"




Appx0866-67.

The substitution of the 1-sulfonic acid-2-methylprop-2-yl functional group at $R_3$ results in ATBS:

<u>ATBS</u>



Appx0866-67. *See also* Chemtall Br. at 25 (describing the group at attached at $R_3$ as a "substituted alkyl group . . . containing the heteroatoms sulfur (S) and oxygen (O)").

Thus, ATBS contains the signature characteristic of an amide function compound, namely the inclusion of the amide functional group; however, the replacement of a hydrogen atom at $R_3$ with a separate functional group containing sulfonic acid renders ATBS a derivative of an amide, and not an amide itself.

The relevant statute, Subheading Note 1 to Chapter 29, directs that derivatives of a chemical compound (including derivatives of amides) must be classified in the residual subheading for "Other," as opposed to the subheading for "Amides." Appx1230. Thus, the statute requires classification of ATBS under subheading 2924.19.80, HTSUS (Other), as opposed to subheading 2924.19.11, HTSUS (Amides).

III. Procedural History

Chemtall's suit concerns a series of entries of ATBS imported by Chemtall through the Ports of New Orleans and Savannah during 2010 and 2011. Chemtall Br. at 4. Although Customs and Border Protection (CBP) had classified ATBS under 2924.19.80, HTSUS (Amides) since 2002, *see* Appx1448 (CBP Ruling NY I88131 (Dec. 5, 2002)), Chemtall simultaneously imported certain entries of ATBS under 2924.19.11 (3.7 percent duty rate) and other entries of ATBS under

2924.19.80 (6.5 percent duty rate) for several years. *See* Appx1048-1056 (schedule of Chemtall imports).

Chemtall imported the entries at issue in this suit under HTSUS subheading 2924.19.11, and paid a duty rate of 3.7 percent. Appx0024 (Compl. ¶ 7). CBP subsequently liquidated all of those entries under HTSUS subheading 2924.19.80, at the duty rate of 6.5 percent. Appx0025 (Compl. ¶ 9). Chemtall protested CBP's reclassification. Appx0025 (Compl. ¶¶ 10-11). CBP denied the protests because ATBS is a derivative of an amide and Subheading Note 1 to Chapter 29 requires classification of derivatives in the residual "Other" subheading, 2924.19.80, HTSUS (Other). Appx0221 (Chemtall Protest No. 02-11-100074), Appx0338-39 (U.S. Responses to Chemtall's First Set of Discovery Requests (U.S. Resp.), Interrogatory No. 1(a)).

Chemtall filed a complaint contesting the denial of its protests and the classification of ATBS under 2924.19.80, HTSUS (Other). Appx0024. Because the material facts regarding the nature of the merchandise were undisputed, the parties submitted the case to the trial court for resolution on cross-motions for summary judgment. Appx0002-03. On May 25, 2016, the trial court granted the United States' motion for summary judgment, denied Chemtall's motion, and classified ATBS under HTSUS subheading 2924.19.80. Appx0013.

Specifically, the trial court rejected the construction of HTSUS subheading 2924.19.11 advanced by Chemtall because neither the Explanatory Notes nor any textbook, dictionary or treatise supported it. Appx0010. Instead, Chemtall relied upon a bespoke definition prepared for this litigation by its expert witness, Dr. Robson F. Storey. Appx0007. Although the trial court acknowledged that Dr. Storey is a "scientific authority," his definition was inconsistent with the lexicographic authorities, textbooks and other academic sources submitted by Chemtall and the United States. Appx0010.

The trial court construed HTSUS subheading 2924.19.11 in accordance with the Explanatory Notes, textbooks, and common and scientific dictionaries, and explained that "the term 'amides' refers to compounds with an amide functional group and either hydrogen, alkyl radicals, or aryl radicals attached." Appx0008. "[B]ecause the compound in ATBS's $R_3$ position is not hydrogen, an alkyl radical, or aryl radical, the [trial] court conclude[d] that ATBS does not meet the definition of 'Amide' under HTSUS subheading 2924.19.11." Appx0011. In addition, the trial court explained that ATBS is a derivative of acrylamide because "they share the same chemical structure except for the compounds located in the $R_3$ position." Appx0012. More specifically, the Explanatory Notes indicate that ATBS is a "sulfonated derivative" given the replacement of a hydrogen atom at $R_3$ with the

1-sulfonic acid-2-methylprop-2-yl functional group. Appx0011. *See also* Appx0864-66 (Chemtall Resp., Interrogatory Nos. 12, 13).[3]

Finally, the trial court considered Chemtall's argument that, even if ATBS is a derivative of an amide, the ten-digit statistical suffixes under HTSUS subheading 2924.19.11, require classification of ATBS under 2924.19.11.50 because the suffixes are more specific to derivatives of acrylamide. Appx0012. The trial court rejected Chemtall's argument regarding the statistical suffixes because it "presuppose[s] that ATBS meets the definition of 'amide' under HTSUS subheading 2924.19.11," and, in any event, the statistical suffixes are not part of the legal text of the tariff schedule. Appx0012-13.

The trial court entered judgment on May 25, 2016. Appx0014. This appeal followed.

---

[3] Chemtall's representation that the trial court did not place any "restriction" on the substituent group attached to $R_1$ is inaccurate. *Compare* Chemtall Br. at 11 n.5 *with* Appx0010. Although this case did not require the trial court to address the substituent group at $R_1$ in order to conclude that (1) "amides" under 2924.19.11, HTSUS (Amides) attach hydrogen, aryl groups, or alkyl groups to nitrogen at $R_2$ and $R_3$, and (2) the substitution of hydrogen with the sulfonic acid group at $R_3$ renders ATBS a derivative of an amide under 2924.19.80, HTSUS (Other), Appx0010-11, the trial court correctly stated that "'amides' . . . consist[] of an amide functional group with either hydrogen, aryl radicals, or alkyl radicals attached." Appx0011. The trial court did not accept Chemtall's position regarding the composition of the substituent group attached at $R_1$.

## STANDARD OF REVIEW

This Court reviews the trial court's interpretation of tariff provisions *de novo*. *Lynteq, Inc. v. United States*, 976 F.3d 693, 696 (Fed. Cir. 1992) (citing *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed. Cir. 1991)).

## SUMMARY OF THE ARGUMENT

The tariff schedule requires classification of ATBS under subheading 2924.19.80, HTSUS (Other) because ATBS is a derivative of an acyclic amide. The trial court correctly construed the competing subheadings, 2924.19.11, HTSUS (Amides) and 2924.19.80, HTSUS (Other) and determined that "Amides" applies only to compounds that contain an amide functional group and attach hydrogen atoms, alkyl groups or aryl groups. ATBS does not fall under 2924.19.11, HTSUS (Amides) because ATBS substitutes a hydrogen (H-) atom at $R_3$ with an independent, functional group containing sulfonic acid (1-sulfonic acid-2-methylprop-2-yl). The substitution renders ATBS a derivative of an amide and, pursuant to Subheading Note 1, the existence of the residual subheading "Other" compels the classification of ATBS under 2924.19.80, HTSUS (Other).

On appeal, Chemtall asks this Court to reverse the judgment below, arguing that the trial court's construction of 2924.19.11, HTSUS (*Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof: Other: Amides*) was erroneous for three reasons:

1. Chemtall contends that, when construing the statutory subheading 2924.19.11, HTSUS (Amides), the trial court should have accepted the bespoke definition of "amides" prepared for this litigation by Chemtall's expert, Dr. Storey, and rejected the definitions of "amides" set forth in dictionaries, textbooks and the Explanatory Notes. Chemtall Br. at 15, 18-30.

2. Chemtall further contends that the trial court's construction of the eight-digit subheading, 2924.19.11, HTSUS (Amides)—to refer to amide function compounds that attach only hydrogen atoms, alkyl radicals or aryl radicals—was erroneous because various *cyclic* compounds under *different* subheadings within Heading 2924, along with exemplars of "Cyclic Amides" identified in the Explanatory Notes, attach substituent groups containing nitrogen, sulfur and oxygen to the amide functional group. *Id.* at 16, 31-47.

3. Chemtall also contends that whether ATBS is an "'amide' or a 'derivative' of an amide," Subheading Note 1 to Chapter 29 required the trial court to classify ATBS using a 10-digit, non-statutory, statistical suffix under 2924.19.11.50 (*Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof: Other: Amides: Other*). *Id.* at 16, 48-55.

None of Chemtall's contentions has merit. First, the trial court construed 2924.19.11, HTSUS (Amides) in accordance with definitions contained in dictionaries and textbooks, and the guidance set forth in the Explanatory Notes.

Appx0008-11. For the purpose of construing a statutory subheading, the trial court properly credited the definition of "Amide" contained in those authorities over a competing definition prepared by Chemtall's expert, Dr. Storey, for the purpose of this litigation. In fact, Dr. Storey's assertion in this litigation—that "amides" attach "independently, hydrogen, hydrocarbyl, substituted hydrocarbyl" at $R_1$, $R_2$ and $R_3$—contradicts Dr. Storey's testimony contained his prior declaration submitted to CBP in connection with Chemtall's protest, in which Dr. Storey stated that the substituent groups attached to "amides" at $R_1$, $R_2$ and $R_3$ are "independently hydrogen, alkyl groups or aryl groups." *Compare* Appx0267 (Decl. of Robson F. Storey, Ph.D. ¶ 6 (July 16, 2011)) *with* Appx0711 (Expert Report of Robson F. Storey Ph.D. at 4 (May 9, 2014)). The inconsistent definitions submitted by Dr. Storey demonstrate the minimal utility of his opinions with respect to the construction of the relevant HTSUS subheadings.

Second, the exemplar compounds cited by Chemtall illuminate no distinction between the two competing subheadings at issue in this case. All of the exemplar compounds are *cyclic* compounds that are specifically identified by name in different subheadings under Heading 2924. The subheadings covering *cyclic* compounds make no distinction between "Amides" and "Other" from which either party could draw meaningful analogies. That various amide function compounds under *Heading 2924* attach substituent groups containing sulfur, nitrogen and

oxygen is undisputed. Indeed, ATBS attaches a functional group containing sulfur and oxygen atoms, and the parties agree that ATBS is properly classified under Heading 2924 and subheading 2924.19, HTSUS. The point is that when compounds, such as ATBS, attach atoms other than hydrogen and carbon, they are not classifiable at the eight-digit subheading level under subheading 2924.19.11, HTSUS (Amides).

Third, in contrast to its litigation position in the trial court, Chemtall now acknowledges that the structural relationship between compounds determines whether the compound is a derivative. *Compare* Chemtall Br. at 16 *with* Appx0082 (Chemtall Summ. J. Br. at 25) (Chemtall: "a true 'derivative' of a compound requires an actual 'chemical process' rather than an abstract or hypothetical replacement of atoms"); Appx0731 (Storey Report, Ex. 1: "Derivative – A chemical compound that is derived from another chemical compound, through one or more chemical reactions"). Notwithstanding Chemtall's recent pivot on whether a derivative refers to a compound physically derived from a chemical process, Chemtall's argument about the statistical suffixes relies upon the same erroneous assumption that ATBS must be classified under subheading 2924.19.11 at the eight-digit subheading level. Appx0012. But the 10-digit, non-statutory statistical suffixes apply only after the trial court determines the proper eight-digit subheading. In this case, because ATBS is a derivative of an amide and a "residual

subheading named 'Other' [appears] in the series of subheadings concerned," Subheading Note 1 to Chapter 29 requires its classification under 2924.19.80, HTSUS (Other). Contrary to Chemtall's assertion on appeal, the trial court did not "mischaracterize" its argument regarding the statistical suffixes; rather, the trial court determined that the argument was wrong. Appx0012-13.

Because Chemtall fails to demonstrate any legal error, the judgment below should be affirmed.

## ARGUMENT

Ultimately, the case requires the Court to determine which construction of 2924.19.11, HTSUS (Amides) to accept.

- **Chemtall's construction of 2924.19.11, HTSUS (Amides).** An "amide" contains an amide functional group. The substituent groups are either "hydrogen, hydrocarbyl or substituted hydrocarbyl." Chemtall Br. at 7-12; Appx0711 (Storey Report at 4).

- **The trial court's construction of 2924.19.11, HTSUS (Amides).** "Amides consist of an amide functional group with either hydrogen, aryl radicals or alkyl radicals attached." Appx0010-11.

As we demonstrate below, the trial court's construction of subheadings 2924.19.11, HTSUS (Amides) and 2924.19.80, HTSUS (Other), and classification of ATBS under 2924.19.80, were consistent with the legal framework governing classification and informed by the precise interpretive tools approved by this Court.

## I. Legal Framework

The General Rules of Interpretation (GRIs) govern classification of merchandise under the HTSUS and they are applied in numerical order. Appx1243. *See*, *e.g*., *Honda of Am. Mfg., Inc. v. United States*, 607 F.3d 771, 773 (Fed. Cir. 2010) (citing *Millenium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009) and *ABB, Inc. v. United States*, 421 F.3d 1274, 1276 n.4 (Fed. Cir. 2005)). GRI 1 states that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the [remaining GRIs]."

In addition to the GRIs, the legal text of the HTSUS includes all provisions enacted by Congress, including Section and Chapter Notes. *Honda of Am., Mfg., Inc.*, 607 F.3d at 773. The Section and Chapter Notes "are not optional interpretative rules, but are statutory law[.]" *Park B. Smith, Ltd. v. United States,* 347 F.3d 922, 926 (Fed. Cir. 2003). *See also Alcan Food Packaging (Shelbyville) v. United States*, 771 F.3d 1364, 1367 (Fed. Cir. 2014) (noting that chapter notes are part of statutory text of the tariff schedule) (citing 19 U.S.C. § 1202).

## II. The Trial Court Correctly Classified ATBS Under Subheading 2924.19.80, HTSUS (Other)

### A. ATBS Is Not An "Amide" Pursuant To Subheading 2924.19.11, HTSUS (Amides)

All products of Heading 2924, including "[a]cyclic amides (including acyclic carbamates) and their derivatives" contain an amide functional group or they would be classified elsewhere. *See* Appx1419 (Storey Tr. at 57), Appx1430 (Storey Tr. at 68). Thus, the existence of an amide functional group does not determine whether the eight-digit subheading for *Amides* or *Other* is applicable. Chemtall Br. at 9. Although the tariff schedule does not define the term "Amides," the Explanatory Notes to Heading 29.24 provide guidance:

> Amides are compounds which contain the following characteristic group:
>
> | | | |
> |---|---|---|
> | (–CONH$_2$) | ((–CO)$_2$NH) | ((–CO)$_3$N) |
> | Primary amide | Secondary amide | Tertiary amide |
>
> The hydrogen of the (–NH$_2$) or (–NH) groups may be substituted by alkyl or aryl radicals, in which case the products are N– substituted amides.

Appx1264.

The Explanatory Notes were "not enacted by Congress, [but they] 'are "generally indicative" of the proper interpretation of a tariff provision,' and [courts] have 'credited the unambiguous text of relevant explanatory notes absent persuasive reasons to disregard it.'" *Alcan Food Packaging (Shelbyville)*, 771 F.3d

at 1367 (quoting *Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed. Cir. 2008)); *see also Lynteq, Inc.*, 976 F.2d at 699 (quoting H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 549 (1988)), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582. In this case, for the purposes of clarifying the meaning of "amides" under Heading 2924, the Explanatory Notes provide that an "amide" contains the characteristic N-C=O group, where the substituent groups attached to the amide functional group are hydrogen, alkyl radicals or aryl radicals. Appx1264.

Significantly, the description of "amides" in the Explanatory Notes is consistent with (if not broader than) dictionary and textbook definitions of "amide."

- "A derivative of a carboxylic acid with general formula $RCONH_2$, where R is hydrogen or an alkyl or aryl radical." Appx1799 (Amide, *McGraw-Hill Concise Encyclopedia of Chemistry* (2004)).

- "An amide of the form R–CO–$NH_2$ is called a primary amide because there is only one carbon atom bonded to the amide nitrogen. An amide with an alkyl group on nitrogen (R–CO–NHR') is called a secondary amide or an N-substituted amide. Amides with two alkyl groups on the amide nitrogen (R–CO–NR") are called tertiary amides or N,N-disubstituted amides. Appx1634 (L.G. Wade Jr., *Organic Chemistry* 984 (8th ed. 2013)).

- "Amides, $RCONH_2$, are compounds in which the hydroxyl group is replaced by an amino group. The nitrogen of the amino group may bear zero, one, or two alkyl groups." Appx0255 (Streitweiser, *et al.*, *Introduction to Organic Chemistry* 511 (4th ed. 1992)).

- "An amide is a carboxylic acid derivative that has the following general structural formula.




R1, R2 and R3 could be hydrogen atoms, alkyl groups or aryl groups, or any combination thereof." Appx1323 (OChemPal (Academic Internet Source)), *available at* http://www.ochempal.org/index.php/alphabetical/a-b/amide/ (last visited Mar. 23, 2017)).

Thus, the dictionary and textbook definitions of "amide" are consistent with the description contained in the Explanatory Notes; namely, an "amide" contains (1) an amide functional group, and (2) substituent groups composed of hydrogen atoms, aryl groups or alkyl groups.

ATBS contains an amide functional group, but attaches an independent functional group (1-sulfonic acid-2-methylprop-2-yl) at $R_3$. Appx0864-66 (Chemtall. Resp., Interrogatory Nos. 12-13). Because ATBS does not fit any definition of "amide" set forth in the Explanatory Notes, dictionaries or textbooks, the trial court determined that ATBS belonged under 2924.19.80, HTSUS (Other). Appx0010-11.

### B. Because ATBS Is A Derivative Of An Amide, Chapter 29, Subheading Note 1 Requires Its Classification Under The Residual "Other" Subheading, 2924.19.80, HTSUS (Other)

According to Chapter 29, Subheading Note 1:

> Within any one heading of this chapter, derivatives of a chemical compound (or group of chemical compounds) are to be classified in the same subheading as that compound (or group of compounds) provided that they are not more specifically covered by any other subheading and that there is no residual subheading named "Other" in the series of subheadings concerned.

Appx1230.

As noted above, the chapter notes are part of the statutory text. *See Honda of Am., Mfg., Inc.*, 607 F.3d at 773. Thus, pursuant to Subheading Note 1, a derivative of an amide may not be classified in the tariff subheading, 2924.19.11, HTSUS (Amides), because Congress provided a residual subheading (*i.e.*, an "other" provision) in the same series of subheadings under 2924.19, HTSUS. *See* Appx1230 (Chapter 29, Subheading Note 1); *see also Lonza, Inc. v. United States*, 960 F. Supp. 374, 378 (Ct. Int'l Trade 1997) (according to Subheading Note 1 to Chapter 29, an imported salt may be classified in the same subheading as its parent only when neither a more specific subheading nor a residual subheading is available); *E.T. Horn Co. v. United States*, 367 F.3d 1326, 1335-36 (Fed. Cir. 2004). Heading 2924 contains a residual subheading, "Other," 2924.19.80,

HTSUS (Other) within the same series as 2924.19.11, HTSUS (Amides). Appx1233.

Thus, Subheading Note 1 to Chapter 29 and Heading 2924 contemplate a distinction between "acyclic amides . . . and their derivatives." Appx1233 (Heading 2924, HTSUS). Indeed, any other construction would render Subheading Note 1 meaningless. *See Lonza, Inc.*, 960 F. Supp. at 379 ("Subheading Note 1 would be surplussage if Plaintiff's interpretation of it was accurate. If Congress intended for the derivative of a compound to be automatically classified with that compound, the Subheading Note would be superfluous.") Further, the tariff language in question describes "acyclic amides . . . *and their derivatives*." Subheading 2924.19, HTSUS (emphasis added) The conjunctive word "and" reflects a distinction between (1) acyclic amides and (2) their derivatives, such that Congress treated them differently for the purposes of classification. *See* 73 Am. Jur. 2d Statutes § 147 (citing *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1078 (2011)).

Although the HTSUS does not define "derivative," this Court explained that, for the purposes of classifying chemicals, the term "derivative" refers to a compound that is structurally related to another compound if, for instance, one atom is replaced with another atom or group of atoms. *See E.T. Horn & Co.*, 367 F.3d at 1331; *Vanetta U.S.A., Inc. v. United States*, 306 F. Supp. 2d 1313, 1317 n.7

(Ct. Int'l Trade 2004). Multiple dictionaries sources support this Court's explanation. *See* Appx1458 (Derivative, *Webster's New Int'l Dictionary* (2d ed. 1942)) ("2. *Chem.* A substance so related to another substance by modification or partial substitution as to be regarded as theoretically derived from it, even when not obtainable from it in practice; thus, the amino compounds are *derivatives* of ammonia") (italics in original); *see also* Appx1454 (Derivative, *Funk & Wagnalls Standard College Dictionary* (1973)); Appx1464 (Derivative, *Oxford English Dictionary* (Online ed. 2014)).

Moreover, although Heading 2924 does not identify any particular types of derivatives of acyclic amides, other headings in Chapter 29 include references to "halogenated, sulphonated, nitrated or nitrosated derivatives." *See*, *e.g.*, Headings 2904 to 2906, 2908 to 2911 and 2913 to 2920. The Explanatory Notes to Chapter 29, Chapter Note 4, provide:

> **(F) Halogenated, sulphonated, nitrated or nitrosated derivatives and combinations thereof** (Chapter Note 4)
>
> The halogenated, sulphonated, nitrated and nitrosated derivatives are formed by substitution of one or more hydrogen atoms in the parent compound by one or more halogens, sulpho ($-SO_3H$), nitro ($-NO_2$) or nitroso (-NO) groups or by any combination thereof. Any functional group (e.g., aldehyde, carboxylic acid, amine) taken into consideration for classification should remain intact in such derivatives.

Appx1254 (Explanatory Notes to Chapter 29, Chapter Note 4). Thus, although Heading 2924 places no limits on the particular categories of derivatives of acyclic amides embraced by the heading, the Explanatory Notes specifically identify sulfonated derivatives as one such category. In this case, the trial court determined that ATBS is a sulfonated derivative of an acyclic amide—specifically, acrylamide—because the amide functional group remains intact and a hydrogen atom from the parent structure at $R_3$ has been replaced by an independent functional group containing sulfonic acid (1-sulfonic acid-2-methylprop-2-yl). Appx0011; *see also* Appx0865 (Chemtall Resp., Interrogatory No. 12). Because ATBS is a derivative of an amide, but not an amide itself, the statute requires its classification under 2924.19.80, HTSUS (Other). Appx0011-12.

## III. Chemtall Fails To Show That The Trial Court's Construction Of Subheading 2924.19.11, HTSUS (Amides) Was Erroneous

Chemtall's competing statutory construction of 2924.19.11, HTSUS (Amides) relies upon a bespoke definition of "amides" specifically prepared for this litigation by Dr. Storey. Indeed, Chemtall's appeal rises and falls on this Court's rejection of the dictionary and textbook definitions of "amides" adopted by the trial court, and its acceptance of Dr. Storey's opinion that "amides" include any amide function compound attaching "substituted hydrocarbyl" at $R_1$, $R_2$ and $R_3$. Appx0626 (Storey Aff., Figure 4 (Feb. 23, 2015) ("$R_1$, $R_2$ and $R_3$ are independently hydrogen, hydrocarbyl or substituted hydrocarbyl")); Appx0711 (Storey Report at

4 (same)). Dr. Storey defines substituted hydrocarbyl as “a hydrocarbyl radical in which one or more hydrogen atoms have been replaced with substituents containing heteroatoms, for example, hydroxyl, amine, halogen, carboxylic acid (or salts therefrom), sulfonic acid (or salts therefrom), and the like.” Appx0732. According to Chemtall, the functional group containing sulfonic acid attached to ATBS at $R_3$ constitutes “substituted hydrocarbyl.” Chemtall Br. at 25. If compounds classifiable under 2924.19.11, HTSUS (Amides) include compounds that attach “substituted hydrocarbyl” at $R_3$, then Chemtall contends that ATBS would fall within 2924.19.11.

The problem with Chemtall’s proposed construction of 2924.19.11, HTSUS (Amides) is that no dictionary, textbook or treatise states that amides may attach “substituted hydrocarbyl.” Appx0010. To the contrary, as the trial court determined, lexicographic authorities, textbooks, academic sources and the Explanatory Notes uniformly restrict an amide’s substituent groups to hydrogen, alkyl groups or aryl groups. *See* Appx0007-09. Chemtall’s preference that the trial court accept its expert’s, unsupported definition, over dictionaries, textbooks, and the Explanatory Notes fails to show that the trial court’s construction of the tariff provision was erroneous.

### A. The Trial Court Properly Relied Upon Dictionaries And Chemistry Textbooks To Construe Subheading 2924.19.11, HTSUS (Amides)

The trial court construes "tariff terms according to their common and commercial meanings, and may rely on both its own understanding of the term as well as upon lexicographic and scientific authorities . . . [and] may also refer to the Explanatory Notes" for guidance. Appx0005 (citing *Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003) and *E.T. Horn Co. v. United States*, 367 F.3d 1326, 1329 (Fed. Cir. 2004)). *Cf. Sigma-Tau Healthsci., Inc. v. United States*, 838 F.3d 1272, 1279 (Fed. Cir. 2016) (in the event the court identifies a disagreement between dictionaries or other extrinsic references, the "court may 'properly rel[y] on the definition most commonly found in the lexicographic sources to derive the common meaning of this term'") (quoting *Len-Ron Mfg. Co.*, 334 F.3d at 1310)). Although the trial court possesses discretion to consider an expert opinion when construing the meaning of a tariff provision, "[e]xpert opinions are merely advisory . . . and are given weight only to the extent they are consistent with lexicographic and other reliable sources." *Samsung Int'l, Inc. v. United States*, 887 F. Supp. 2d 1330, 1339 n. 18 (citing *Kahrs Int'l, Inc. v. United States*, 791 F. Supp. 2d 1228, 1240-41 (Ct. Int'l Trade 2011)). Dictionaries, textbooks and treatises are entitled to more weight than witness testimony given that, at times, "witnesses are prompted by bias or personal interest." *United States v. Florea & Co.*, 25 C.C.P.A. 292, 296 (C.C.P.A. 1938).

In this case, the trial court construed subheading 2924.19.11, HTSUS (Amides) according to its "common and commercial meaning," using lexicographic authorities and textbooks, along with the Explanatory Notes. Appx0005. Having reviewed these sources, the trial court observed that "the difference between an 'amide' and 'other' compounds featuring the amide functional group under HTSUS subheading 2924.19 . . . turns on the exact composition of each R-group." Appx0006. The trial court then reviewed the definitions of "amides" set forth in the sources cited by both parties, and determined that all such sources uniformly specify that an "amide" attaches hydrogen atoms, alkyl radicals, or aryl radicals. Appx0008-10 (citing sources).

Chemtall argues that the trial court erred because it credited the definitions of "Amide" contained in the Explanatory Notes, dictionaries and textbooks over Dr. Storey's competing definition. Chemtall Br. at 25; *see also id.* at 15 and 30 (arguing that the dictionary and textbook definitions on which the trial court relied were "unsophisticated" and "commonly used to introduce basic chemistry concepts to beginning students") (quoting Appx1498-1499). The trial court considered Dr. Storey's opinion that amides may attach "substituted hydrocarbyl," but determined that Dr. Storey's opinion had little value because no "dictionary, treatise, textbook or other information source" states that "'substituted hydrocarbyls' can appear in 'amides' in addition to alkyl or aryl radicals.'" Appx0010 (citing *Mead Corp. v.*

*United States*, 283 F.3d 1342, 1346 (Fed. Cir. 2002)). Although Chemtall insists that Dr. Storey's definition is superior to the dictionaries and textbooks referenced by both parties, Chemtall cites no authority for the proposition that classification should be governed by definitions *other than* those found in lexicographic sources and textbooks—especially when such definitions appear only in an expert report prepared for litigation. Federal Circuit precedent stands for the opposite proposition. *See Len-Ron Mfg. Co.*, 334 F.3d at 1309-10 (explaining that the trial court "properly relied on the definition most commonly found in the lexicographical sources to derive the common meaning of ['vanity case']" and rejecting importer's argument that inconsistencies in those dictionary definitions required the court to credit expert testimony on construction that term). Indeed, notwithstanding Chemtall's observation that the United States "presented no experts of its own to rebut the opinion of Chemtall's expert," Chemtall Br. at 15, no expert testimony is necessary when the Explanatory Notes, several dictionaries and chemistry textbooks provide a consistent definition.

Further, Chemtall's assertion that the trial court relied on "unsophisticated" sources rings hollow when Chemtall and its experts cited the same textbooks referenced in the trial court's opinion in support of Chemtall's protest, summary judgment briefing and this appeal. *Compare* Appx0008 (citing L.G. Wade Jr., *Organic Chemistry* 984 (8th ed. 2013) and Appx0009 (citing Andrew Streitweiser,

*et al.*, *Introduction to Organic Chemistry* 511 (4th ed. 1992)) *with* Chemtall Br. at 28 (describing L.G. Wade Jr.'s *Organic Chemistry* as a "highly-regarded textbook"), Appx0133-34, Appx0138-40 (Appendix A to Decl. of Andrew Barron in support of Chemtall's Protest (attaching excerpt from Andrew Streitweiser, *et al.*, *Introduction to Organic Chemistry* 511) (4th ed. 1992)), Appx0629 (Aff. of Robson F. Storey ¶¶ 14-15 n.4 (Feb. 23, 2015) (citing L.G. Wade Jr., *Organic Chemistry* 741 (8th ed. 2013)), and Appx0711 (Storey Report at ¶ 12 n.1 (citing L.G. Wade Jr., *Organic Chemistry* 978-1040 (6th ed. 2006)).

B. The Explanatory Notes Support The Trial Court's Construction Of Subheading 2924.19.11, HTSUS (Amides)

On one hand, Chemtall argues that the trial court's construction of 2924.19.11, HTSUS (Amides) improperly relied on the Explanatory Note to Heading 2924; on the other hand, Chemtall argues that the Explanatory Notes "prove" that "amides" may attach substituted hydrocarbyl. *Compare* Chemtall Br. at 21 (arguing that the trial court improperly relied on a "single vague and ambiguous statement in the [Explanatory Notes]") *with id.* at 32 (arguing that Explanatory Note 29.24 supports Chemtall's assertion that "amides" attach substituted hydrocarbyl).

Putting aside the inconsistency, Chemtall's argument regarding the trial court's reference to the Explanatory Notes concerns the following sentence in the Note to 29.24: "The hydrogen of the ($–NH_2$) or (>NH) groups may be substituted

by alkyl or aryl radicals." Appx1264. Chemtall focuses on the word "may" in that sentence, arguing that the trial court impermissibly interpreted it as "must." Chemtall Br. at 32. But the trial court did not "misinterpret" the Explanatory Notes. Although the Explanatory Notes provide that when hydrogen atoms are substituted with alkyl or aryl radicals, the compounds are "N– substituted amides," the Explanatory Notes neither require such substitutions nor specify that substitutions with other groups are impermissible. Appx1264. To the extent that the hydrogen atoms at $R_2$ and $R_3$ are substituted with alkyl and aryl radicals, they are N– substituted amides; to the extent that the hydrogen atoms are substituted with other groups, they are "other" amide function compounds.

The Explanatory Note simply clarifies what types of substitutions still render any number of compounds in the global universe of "carboxyamide-function compounds; amide-function compounds of carbonic acid" under Heading 2924 an "amide." In any case, contrary to Chemtall's argument, the Explanatory Notes do not establish that the hydrogen of the (–NH2) or (>NH) groups may be substituted by alkyl or aryl radicals, *or substituted hydrocarbyl*, and still may be classified under the statutory subheading for "Amides." *Compare* Chemtall Br. at 32 *with* Appx1264-65.

### C. Dr. Storey's July 16, 2011 Declaration Stated That $R_1$, $R_2$, And $R_3$ Are "Independently Hydrogen, Alkyl Or Aryl"

Putting aside that dictionaries and textbooks uniformly contradict Dr. Storey's definition prepared for this litigation, Dr. Storey's definitions contradict themselves. As part of Chemtall's protest to CBP, Chemtall submitted a declaration prepared by Dr. Storey, in which he stated that the substituent groups at "$R_1$, $R_2$, and $R_3$ are independently hydrogen, alkyl or aryl:"




$R_1$, $R_2$, $R_3$ are independently hydrogen, alkyl, or aryl

Appx0267 (Decl. of Robson F. Storey, Ph.D. ¶ 6 (July 16, 2011)). Thus, Dr. Storey's identification of the substituent groups attached to an "amide" in his July 16, 2011 declaration is consistent with the trial court's identification of those substituent groups in its decision. *Compare* Appx0267 *with* Appx0008-10.

The term "substituted hydrocarbyl" first appears in Chemtall's discovery responses and Dr. Storey's expert report, prepared in connection with this litigation. *See* Appx0625-27 (Report of Robson F. Storey, Ph.D. ¶ 13 (May 9, 2014))) ("$R_1$, $R_2$, and $R_3$ may independently be hydrogen, hydrocarbyl, or substituted hydrocarbyl"); Appx0863-64 (Chemtall Resp., Interrogatory No. 10).

The conflicting definitions prepared by Dr. Storey, either as part of Chemtall's protest or this litigation, undermines the thrust of Chemtall's argument, namely, that amides attach "substituted hydrocarbyl." If anything, the definition contained in Dr. Storey's July 16, 2011 declaration demonstrates that the definitions relied upon by the trial court accurately reflect the common meaning of "amides." *Compare* Appx0267 *with* Appx0008-10.

D. No Dictionary, Textbook Or Treatise Cited By Chemtall States That Amides Attach "Substituted Hydrocarbyl"

Although Chemtall insists that textbooks support Dr. Storey's recent assertion that "amides" may attach "substituted hydrocarbyl," the textbooks cited only support Dr. Storey's uncontested proposition that an amide is a "derivative of carboxylic acid in which the –OH group has been replaced by the $–NR_2R_3$ group[.]" *Compare* Appx0711 (Storey Report at 4 (citing T.W. Solomons and Craig Fryhle, *Organic Chemistry* 779-830 (10th ed. 2011) and L.G. Wade Jr., *Organic Chemistry* 439, 978-1040 (6th ed. 2011))) *with* Appx1799 ("Amide" refers to a "derivative of carboxylic acid with general formula $RCONH_2$").

Dr. Storey cites no authority for the remaining, *contested* portion of his definition, namely, his assertion that "$R_2$ and $R_3$ are independently hydrogen, hydrocarbyl, or substituted hydrocarbyl." Appx0711. The description of amides contained in Wade, *Organic Chemistry*, is excerpted below and only mentions attachment of alkyl groups:

An amide of the form R—CO—$NH_2$ is called a **primary amide** because there is only one carbon atom bonded to the amide nitrogen. An amide with an alkyl group on nitrogen (R—CO—NHR′) is called a **secondary amide** or an ***N*-substituted amide.** Amides with two alkyl groups on the amide nitrogen (R—CO—$NR'_2$) are called **tertiary amides** or ***N*,*N*-disubstituted amides.**



primary amide — secondary amide (*N*-substituted amide) — tertiary amide (*N*,*N*-disubstituted amide)

*Compare* Appx1634 (L.G. Wade, *Organic Chemistry* 984 (8th ed. 2013)) *with* Chemtall Br. at 25 (stating that ATBS attaches a “*substituted* alkyl group” at $R_3$) (emphasis added). In addition, contrary to Chemtall’s assertion, Wade does not refer to penicillin as a “textbook example[] of universally recognized amides.” *Cf.* Chemtall Br. at 28. In fact, the *Organic Chemistry* textbook depicts penicillin under a separate discussion about the “Biological Reactivity of β-Lactams.” Appx1660-61. In any case, even Chemtall concedes that Congress classifies penicillin under an entirely separate heading of the tariff schedule. *See* Heading 2941, HTSUS (Antibiotics); Chemtall Br. at 28 n.12.

The other textbook cited by Dr. Storey, T.W. Solomons and Craig Fryhle, *Organic Chemistry* (10th ed. 2011), makes no mention of “substituted hydrocarbyl.” Instead, Solomons and Fryhle provide a definition consistent with that adopted by the trial court: “Amides have the formulas $RCONH_2$, RCONHR', or RCONR'R" where a carbonyl group is bonded to a nitrogen atom bearing hydrogen and/or alkyl groups.” *See* Solomons and Fryhle, *Organic Chemistry* 72 (10th ed. 2011).

On appeal, Chemtall cites a new textbook, *Organic Chemistry: A Short Course*, to bolster the definition contained in Dr. Storey's reports and declarations prepared for this litigation, but the textbook contains no mention of "substituted hydrocarbyl." *See* Chemtall Br. at 28 (David J. Hart, *Organic Chemistry: A Short Course* 313 (13th ed. 2012)). Instead, the textbook states that "'[s]econdary and tertiary amides, in which one or both of the hydrogens on the nitrogen atom are replaced by organic groups, are described in the next chapter.'" *Id*. at 28 (quoting David J. Hart, *Organic Chemistry: A Short Course* 313 (13th ed. 2012)). The next chapter in *Organic Chemistry: A Short Course* depicts two compounds with only alkyl and aryl groups attached to the amide functional group—neither attaches "substituted hydrocarbyl." *See* Hart, *supra*, at 344 (depicting *N*,*N*-diethyl-*m*-toluamide, which attaches alkyl groups at $R_2$ and $R_3$, and acetanilide, which attaches hydrogen at $R_2$ and an aryl group at $R_3$).

Nonetheless, because *Organic Chemistry: A Short Course* does not specifically define an "organic group," Chemtall cites to Dr. Storey's report—not a dictionary, textbook or treatise—to conclude that "'organic groups' include 'hydrocarbyl groups' and 'substituted hydrocarbyl.'" Chemtall Br. at 29 & n.14 (citing Appx0711, Appx0732 (Storey Report at 4 and Ex. 1).[4] Thus, Chemtall cites

[4] The index to *Organic Chemistry: A Short Course* refers to "quaternary ammonium salts," as "[i]onic compounds with four *organic groups (alkyl or aryl)*

*Organic Chemistry: A Short Course* to give meaning to Dr. Storey's definition, and then cites Dr. Storey's definition to fill in gaps in *Organic Chemistry: A Short Course.* But Chemtall's circular logic still relies on the incorrect and unsupported assumption that a compound is an "Amide" pursuant to 2924.19.11, HTSUS (Amides) when it attaches "substituted hydrocarbyl." Chemtall cites no authority, other than Dr. Storey, stating that the substituent groups attached to "amides" may consist of "substituted hydrocarbyl."

Moreover, even if *Organic Chemistry: A Short Course* specifies that an "amide" may attach any "organic group" at $R_2$ and $R_3$, no contradiction exists between *Organic Chemistry: A Short Course* and any authority cited by the trial court because hydrogen atoms, aryl groups and alkyl groups all fit under the umbrella of "organic groups." *See* Chemtall Br. at 29.

E. Three Patents That Reference "Substituted Hydrocarbyl" Fail To Establish A Common And Commercial Meaning Of "Amides" That Is Different From Dictionary And Textbook Definitions

Three patents cited by Chemtall fail to establish that "amide" possesses a commercial meaning that is different from its dictionary and textbook meaning. Definitions contained in *patents* provide little value when construing *tariff* terms. As Dr. Storey explained, the various embodiments of an "amide" reflected in a

bonded to nitrogen." *See* David J. Hart, *Organic Chemistry: A Short Course* 576 (emphasis added).

given patent are unique to the invention protected by that patent. Appx1601 (Storey Tr. at 139-140). In contrast, Congress frames tariff provisions so as to classify goods in accordance with their common or dictionary meanings, in the absence of evidence to the contrary. *See Russell Stadelman & Co. v. United States*, 242 F.3d 1044, 1048-49 (Fed. Cir. 2002).

A definition of "amide" set forth in an invention created by Dr. Storey illustrates the limited utility of patent definitions to explain tariff subheadings. For instance, Patent No. US 8,344,073 specifies that when "used herein," the substituent groups attached to an "amide" are $R_1$- $R_3$ are "hydrogen" or "optionally substituted hydrocarbyl":

> As used herein, "amide" refers to a compound of the following formula:




> wherein $R^1$-$R^3$ are each, independently, hydrogen or optionally substituted hydrocarbyl. In some embodiments, $R^1$ is hydrogen. In some embodiments, $R^1$ is hydrocarbyl. In some embodiments, $R^2$ is hydrogen. In some embodiments, $R^2$ and $R^3$ are hydrocarbyl. In some embodiments, the amide is N,N-dimethylformamide.

Appx1827 (Patent No. US 8,344,073). Although the patent contains the term "optionally substituted hydrocarbyl," all of the "embodiments" described in Dr. Storey's patent indicate that $R_1$, $R_2$ and $R_3$ are either hydrogen or hydrocarbyl, not

"substituted hydrocarbyl." Appx1827. In his deposition, Dr. Storey explained that the definition of an amide, as used in his patent, is not necessarily the same definition of amide that Chemtall now alleges should be used for all tariff classification purposes: "Q: []Is there a reason why you didn't say that in some embodiments $R_1$, $R_2$, or $R_3$ could be substituted hydrocarbyl? A. No. I mean, there was no reason. I mean the purpose here was to cover compounds that were important to the invention, not to put forth a definition of amide, necessarily." Appx1601 (Storey Tr. at 139-40).

Thus, Chemtall cannot extrapolate the use of the term "substituted hydrocarbyl" from a handful of patents protecting particular inventions to a broader declaration about the common and commercial meaning of a universally-applicable tariff provision.

F. Neither Lab Report HT20101734 Nor Its Backup Materials Supports Chemtall's Argument That Subheading 2924.19.11, HTSUS (Amides) Refers To Compounds Attaching "Substituted Hydrocarbyl"

Chemtall also mischaracterizes certain record evidence in support of its erroneous argument that the trial court "ignored other evidence supporting Dr. Storey's definition of 'amide' and otherwise demonstrating that ATBS is commonly recognized as an amide." Chemtall Br. at 30. Specifically, Chemtall references Lab Report HT20101734, a one-page document, stating that the tested "substance is a carboxyamide-function compound containing acrylamide and has

characteristics of 2-Acrylamide-2methylproanesulfonic acid (ATBS)." Appx0373. What Chemtall erroneously describes as the "report" are three pages of test results containing handwritten comments made by a CBP chemist, Mark Gurule. The handwritten comments reflect undisputed information, namely, that: (1) ATBS attaches a hydrogen atom to the nitrogen atom at $R_2$; and (2) the structure contains a carbonyl group (C=O), which is characteristic of any compound containing an amide functional group. Appx0394-96. In any event, to the extent that Mr. Gurule's handwritten notes are relevant to the application of the statute to ATBS, his notes referred to the sample tested, which contained acrylamide. Appx0373.

Neither the lab report nor its backup materials speaks to the construction the tariff subheadings at issue in this case. Despite Chemtall's insistence that the trial court "ignored" Mr. Gurule's comments, Chemtall Br. at 30, 31, Mr. Gurule's notes shed no light on the correct construction of the competing statutory subheadings. Certainly, nothing in Mr. Gurule's comments "supports Dr. Storey's definition of 'amide'" or constitutes an "independent conclu[sion] that ATBS is an 'amide.'" *Compare* Chemtall Br. at 30 *with* Appx0373.

Moreover, in contrast to the report prepared by Mr. Gurule in 2010, which identified the compounds contained in the sample provided, an earlier CBP report, Laboratory Report No. NY20021377 (2002 Report), evaluated whether ATBS was "an acyclic carboxyamide in 2924.19.1050 or 2924.19.8000" and "[i]ndicate[d]

functional groups." Appx1450. The 2002 Report stated: "The product is a sulfonated derivative of an acyclic carboxyamide function compound of 2924.19.8000. The functional groups on this nonaromatic product are a sulfonate group and a carboxyamide group." Appx1450. The 2002 Report was the basis of CBP's prior ruling that ATBS should be classified under 2924.19.80, HTSUS (Other). *See* Appx1448 (Customs Ruling NY I88131 (Dec. 5, 2002)). Thus, the CBP report that actually tested ATBS for classification purposes states that ATBS is a derivative and should be classified under 2929.19.80. Appx1450.

G. <u>Chemtall's Definition Of "Amides" Constitutes A Term Of Art</u>

Chemtall repeatedly asserts that Dr. Storey's definition of "amide" to include "substituted hydrocarbyl" reflects the use of the term as it "is commonly understood within the scientific community and commercial sector[.]" Chemtall Br. at 11; *see also id.* at 15, 18, 21, 24, 25 (asserting that "amides" is "commonly understood" in the sciences and commerce to include "substituted hydrocarbyl"). But despite Chemtall's insistence that the "scientific and commercial communities," *id.* at 21, recognize Dr. Storey's "documented" definition of "amides," the definition is documented nowhere other than Dr. Storey's report and declarations prepared for this litigation, and is inconsistent with the definition "documented" in Dr. Storey's July 2011 declaration. Indeed, no chemistry

textbook cited by either party states that "amides" attach "substituted hydrocarbyl." Appx0010.

Although Dr. Storey may use the term "amide" to refer to virtually any amide function compound—much in the way that some people in parts of the United States may refer to any carbonated beverage as a "Coke," whether or not that beverage is a Coca-Cola product—the usage is at best a term of art, not a legal basis to assume that subheading 2924.19.11, HTSUS (Amides) includes any compound that contains an amide functional group, especially when every compound under Heading 2924 contains an amide functional group. *See* Appx1419 (Storey Tr. at 57). But terms of art are disfavored when interpreting a statute, especially when, as in this case, they are inconsistent with definitions set forth in dictionaries and organic chemistry textbooks. *See, e.g.*, *Faus Grp., Inc. v. United States*, 358 F. Supp. 2d 1244, 1250-51 (Ct. Int'l Trade 2004) (citing, *inter alia*, *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925); *Campbell v. Merit Sys. Protection Bd.*, 27 F.3d 1560, 1567 (Fed. Cir. 1994)).

## IV. Chemtall's Reliance On Various Exemplars—All Of Which Are Identified By Name Under A Separate Group Of Subheadings—Fails To Show That The Trial Court's Construction Of Subheading 2924.19.11, HTSUS (Amide) Was Erroneous

Chemtall's second argument on appeal relies on the erroneous assumption that the trial court determined that *all* amide function compounds *under Heading 2924* only attach hydrogen atoms, alkyl groups, or aryl groups. *See*, *e.g.*, Chemtall

Br. at 35 (explaining that the trial court's opinion was incorrect because "amides of *Heading 2924* may . . . contain a nitrogen heteroatom") (emphasis added). But the trial court only construed subheading 2924.19.11, HTSUS (Amides), not all amide function compounds under Heading 2924. Appx0010-11.

In this Court and in the trial court, Chemtall attempts to blur the distinction between Heading 2924, HTSUS, and subheading 2924.19.11, HTSUS (Amides) by using terms such as "general amide" in lieu of "amide functional group," and by using exemplars identified under different subheadings under *Heading 2924*, HTSUS to undermine the trial court's construction of *subheading* 2924.19.11, HTSUS (Amides). *Compare* Chemtall Br. at 8 (Figure 2, depicting an "amide functional group") *with id.* at 10 (describing the same structure as a "general amide"); *id.* at 23 (same); *id.* at 33 (same) and *id.* at 41 (same). *See also id.* at 35 (arguing that the trial court's construction of 2924.19.11, HTSUS (Amides) is incorrect because "*amides of Heading 2924*" do not always attach hydrogen, or alkyl or aryl groups) (emphasis added). But a compound containing an *amide functional group* is not synonymous with an *amide* classifiable under subheading 2924.19.11, HTSUS (Amides). Moreover, like the term "substituted hydrocarbyl," the term "general amide" appears in no authority cited by Chemtall other than Dr. Storey's report and declarations prepared for this litigation.

### A. The Exemplar Compounds Cited By Chemtall Illuminate No Distinction Between Subheading 2924.19.11, HTSUS (Amides) And Subheading 2924.19.80, HTSUS (Other)

The eight exemplars that appear in Chemtall's brief illuminate nothing about the proper construction of 2924.19.11, HTSUS (Amide) or 2924.19.80, HTSUS (Other). Attached to the brief is a table of the exemplar compounds referenced in Chemtall's brief as they are organized under the tariff schedule. Significantly, all are specifically identified *by name* under "Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof." *See*, Table of Exemplars Referenced in Chemtall's Brief, *infra*, at 54.

That various compounds under Heading 2924 attach substituent groups containing nitrogen, oxygen, and sulfur, does not undermine the trial court's construction of subheadings 2924.19.11, HTSUS (Amides) and 2924.19.80, HTSUS (Other), or its classification of ATBS under 2924.19.80, HTSUS (Other). Unlike the two HTSUS subheadings at issue in this case, 2924.19.11 (Amides) and 2924.19.80 (Other), no analogous series of eight-digit subheadings identified as "Amides" and "Other" appears under *Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof*. Moreover, the exemplars do not indicate whether the compounds are cyclic amides or derivatives of cyclic amides. Thus, the exemplars referenced by Chemtall illuminate no distinction between

compounds that are (1) "cyclic amides" or (2) "derivatives" of cyclic amides, from which the parties could draw meaningful analogies.

Moreover, unlike ATBS, the HTSUS identifies seven of the eight exemplars cited by Chemtall by their chemical names in subheadings. *See* 2924.23.10, HTSUS (2-Acetamidobenzoic acid); 2924.29.01, HTSUS (4'-Amino-N-methylacetanilide); 2924.29.20, HTSUS (1-Amino-5-benzamidoanthraquinone); 2924.29.23, HTSUS (4-Aminoacetanilide); 2924.29.31, HTSUS (*p*-Aminobenzoylaminonaphthalene sulfonic acid); 2924.29.31, HTSUS (acet-p-phenetidide (phenacetin)); 2924.29.31, HTSUS (4-Acetamido-2-aminophenol).

Phenacetin appears in two locations within Heading 2924. First, Phenacetin (technical) is identified by name under 2924.29.31 (Phenacetin, technical). Second, Phenacitin, which is a pain reliever, is also identified under 2924.29.62 (Drugs: Other) with a statistical suffix.[5] The eighth exemplar, Acetominophen, is also identified under 2924.29.62 (Drugs: Other) with a unique statistical suffix.[6]

---

[5] *See* Phenacetin, *Merriam-Webster Medical Dictionary* (Online ed. 2017) ("a compound $C_{10}H_{13}NO_2$ formerly used to ease pain or fever but now withdrawn from use because of its link to high blood pressure, heart attacks, cancer, and kidney disease—called also *acetophenetidin*"), available at https://www.merriam-webster.com/dictionary/phenacetin#medicalDictionary (last visited Mar. 23, 2017).

[6] *See* Acetaminophen, *Merriam-Webster Medical Dictionary* (Online ed. 2017) ("a crystalline compound $C_8H_9NO_2$ that is a hydroxy derivative of acetanilide and is used in chemical synthesis and in medicine instead of aspirin to relieve pain and fever—called also *paracetamol*"), available at https://www.merriam-

Although the statistical suffixes are not legally binding, they specifically identify two of the exemplars depicted in Chemtall's brief. Unlike any of the exemplar compounds depicted in Chemtall's brief, neither the tariff schedule nor any statistical suffix identifies ATBS by name.

Finally, Chemtall's argument that "amides of *Heading 2924* may also contain a diazotisable amine group in the $R_2$ or $R_3$ position, which necessarily contains a nitrogen heteroatom," only confirms its effort to conflate the trial court's construction of 2924.19.11 (Amides) with a broader statement regarding Heading 2924, which the trial court did not make. Chemtall Br. at 35-38 (emphasis added). That "some amides of *this heading* also contain a diazotisable amine group" presents no conflict with the trial court's construction of subheading 2924.19.11, HTSUS (Amides). Appx1264 (Explanatory Note to 29.24) (emphasis added). Unlike subheading 2924.19.11, HTSUS (Amides), Heading 2924, HTSUS, includes all "carboxyamide-function compounds; amide-function compounds of carbonic acid." *Compare* Heading 2924 *with* Appx1264. The trial court did not make any rulings concerning the composition of substituent groups in all of Heading 2924; rather, the trial court distinguished between compounds classifiable

webster.com/dictionary/acetaminophen#medicalDictionary (last visited Mar. 23, 2017).

under subheadings 2924.19.11, HTSUS (Amides) and 2924.19.80, HTSUS (Other).

### B. The Exemplar Compounds Listed In The Explanatory Notes Under "Cyclic Amides" Illuminate No Distinction Between Subheading 2924.19.11, HTSUS (Amides) And Subheading 2924.19.80, HTSUS (Other)

Although the tariff schedule separates Heading 2924 into two categories labeled "Acyclic amides (including acyclic carbamates) and their derivatives; salts thereof" and "Cyclic amides (including cyclic carbamates and their derivatives; salts thereof," the Explanatory Notes simply use the terms "Acyclic Amides" and "Cyclic Amides" to represent the same categories. *Compare* Heading 2924, HTSUS *with* Appx1264-65 (Explanatory Note 29.24). The Explanatory Notes provide examples of compounds that fall into these broad categories, but neither direct the classification of any particular compounds in any particular subheadings nor distinguish between compounds that are "amides" or "their derivatives." Thus, the Explanatory Notes to Heading 2924 illuminate no distinction between amides or derivatives of amides, and the trial court did not rely on the Explanatory Notes for that purpose. *See* Appx0008-10. Certainly, the Explanatory Notes' categorization of compounds under the headings "Acyclic Amides" and "Cyclic Amides" does not erase the legally operative "and their derivatives" language from the tariff schedule. *Compare* Chemtall Br. at 39-42 *with* Heading 2924, HTSUS.

### C. Chemtall's Attempt To Analogize ATBS To Various Cyclic Amide Function Compounds Is Flawed Because The HTSUS Does Not Contain An Eight-Digit Subheading For "Amides" Under "Cyclic Amides (Including Cyclic Carbamates) And Their Derivatives; Salts Thereof"

Finally, the HTSUS itself does not support Chemtall's interpretation of 2924.19.11 (Amides). *See* Chemtall Br. at 42. Chemtall erroneously states that "Subheading 2924.29, HTSUS, provides for cyclic amides other than those named in previous subheadings." *Id.* (emphasis added). To the contrary, subheading 2924.29 covers "cyclic amides (including cyclic carbamates) and their derivatives; salts thereof" other than those named in previous headings. *Compare id. with* 2924.29, HTSUS. Again, that various amide function compounds under Heading 2924 contain attach groups containing nitrogen (N), oxygen (O) and sulfur (S) is beside the point. The trial court imposed no restriction on the substituent groups attached to amide functional groups of compounds classified under Heading 2924; indeed, ATBS attaches an amide and the parties agree that it should be classified under Heading 2924 and subheading 2924.19, HTSUS. *See* Appx0026 (Compl. ¶ 11); Appx0058 (Chemtall Summ. J. Br. at 1). Instead, the trial court construed two competing subheadings in the same series, and determined that ATBS does not fall under 2924.19.11, HTSUS (Amides) because the substitution of a hydrogen atom at $R_3$ with an independent functional group (1-sulfonic acid-2-methylprop-2-yl) renders ATBS a derivative of an amide, and not an amide itself. Appx0011-12.

Accordingly, the trial court determined that the residual subheading 2924.19.80, HTSUS (Other), was a better fit given ATBS's composition and the instruction provided in Subheading Note 1. Appx0010. The cyclic exemplars from the tariff schedule referenced in Chemtall's brief illuminate neither the proper construction of subheadings 2924.19.11, HTSUS (Amides) and 2924.19.80, HTSUS (Other), nor the correct classification of ATBS under those subheadings.

## V. The Trial Court Properly Rejected Chemtall's Erroneous Argument That Non-Statutory Statistical Suffixes Require Classification Of ATBS Under Subheading 2924.19.11, HTSUS (Amides)

Chemtall's remaining argument regarding the application of Subheading Note 1 to non-legal statistical suffixes is meritless. As an initial matter, the statistical suffixes are not law. *See* HTSUS, General Statistical Note 2 (explaining that the legal text of the tariff schedule does not incorporate the two-digit "statistical suffixes and any article descriptions applicable thereto"). None of the authorities cited by Chemtall stands for the proposition that the statistical suffixes should be considered when classifying products under the HTSUS. Notwithstanding Chemtall's assertion to the contrary, in *E.T. Horn Co.*, the Federal Circuit did not refer to the statistical suffixes as statutory subheadings; rather it simply included the suffixes when it identified the competing subheadings at the six-digit and eight-digit subheading levels. *See E.T. Horn Co*, 367 F.3d at 1330.

Chemtall argues extensively that Subheading Note 1 *could* apply at the 10-digit statistical suffix level and insists that the trial court "wrongly analyzed" its argument because Subheading Note 1 "only comes into play in the event the [trial court] holds that ATBS is not an amide." Chemtall Br. at 48-54. But even if Subheading Note 1 guided classification between competing statistical suffixes, classification of ATBS under one of the four statistical suffixes listed under 2924.19.11 "presuppose[s] that ATBS meets the definition of 'amide' under HTSUS subheading 2924.19.11." Appx0012. If ATBS is not classifiable as an amide pursuant to 2924.19.11, HTSUS (Amides), then selecting a statistical suffix under that subheading is improper. Subheading 2924.19.80, HTSUS (Other) provides only one statistical suffix.

In any event, Subheading Note 1 governs classification between two parallel subheadings in the same series: here, 2924.19.11, HTSUS (Amides) and 2924.19.80, HTSUS (Other). *See* Subheading Note 1 ("derivatives of a chemical compound . . . are to be classified in the same subheading as that compound (or group of compounds) provided . . . that there is no residual subheading named "Other" *in the series of subheadings concerned*) (emphasis added); GRI No. 6 ("only subheadings at the same level are comparable"). *See also Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998) (stating that the trial court erred when it compared two subheadings under disparate headings for

specificity); *E.M. Chem. v. United States*, 923 F. Supp. 202, 210 (Ct. Int'l Trade 1996) (only subheadings at the same level are comparable). Thus, even if this Court were to treat the statistical suffixes as "subheadings," because the 10-digit suffixes are not in the "same series of subheadings concerned," Chemtall's proposed application of Subheading Note 1 would be inconsistent with the statute.

## CONCLUSION

For these reasons, we respectfully request the Court affirm the judgment below.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Claudia Burke
CLAUDIA BURKE
Assistant Director

s/Eric E. Laufgraben
ERIC E. LAUFGRABEN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-7995
Fax: (202) 514-8624
Email: Eric.E.Laufgraben@usdoj.gov

OF COUNSEL:

PAULA S. SMITH
Attorney
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

March 23, 2017

Attorneys for Defendant-Appellee

TABLE OF EXEMPLARS REFERENCED IN CHEMTALL'S BRIEF

| | Heading/ Subheading | |
|---|---|---|
| **Figures 9(c) and 11:**<br><br>2-Acetamidobenzoic acid<br><br>Chemtall Br. at 41, 46. | <br><br>2924.23<br><br>2924.23.10 | Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof: . . .<br><br>2-Acetamidobenzoic acid (N-acetylanthranilic acid) and its salts:<br><br>2-Acetamidobenzoic acid . . . |
| **Figure 10(c)**<br><br>4'-amino-N-methylacetanilide<br><br>Chemtall Br. at 41. | <br><br>2924.29<br><br>2924.29.01 | Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof: . . .<br><br>Other (con.):<br>Aromatic (con.):<br><br>. . .<br>4'-amino-N-methylacetanilide;. . . |
| **Figure 10(d)**<br><br>1-amino-5-benzamidoanthraquinone<br><br>Chemtall Br. at 45. | <br><br>2924.29 (con.)<br><br>2924.29.20 | Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof: . . .<br><br>Other (con.):<br>Aromatic (con.):<br><br>. . .<br>1-Amino-5-benzamidoanthraquinone. . . |

| | Heading/<br>Subheading | |
|---|---|---|
| **<u>Figures 7 and 10(b):</u>**<br><br>4-aminoacetanilide<br><br>Chemtall Br. at 37, 45. | 2924.29<br>(con.)<br><br>2924.29.23 | Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof: . . .<br><br>Other (con.):<br>Aromatic (con.):<br><br>. . .<br>4-Aminoacetanilide; . . . |
| **<u>Figures 8 and 10(e):</u>**<br><br>*p*-aminobenzoylaminonaphthalene sulfonic acid<br><br>Chemtall Br. at 38, 45. | 2924.29<br>(con.)<br><br>2924.29.31 | Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof: . . .<br><br>Other (con.):<br>Aromatic (con.):<br><br>. . .<br>*p*-Aminobenzoylaminonaphthalene sulfonic acid; . . . |

| | Heading/<br>Subheading | |
|---|---|---|
| **<u>Figures 9(a) and 10(g):</u>**<br><br>acet-p-phenetidide (phenacetin)<br><br>Chemtall Br. at 41, 45. | 2924.29<br>(con.)<br><br>2924.29.31<br><br>* * * * *<br><br>2924.29.62 | Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof: . . .<br><br>Other (con.):<br>Aromatic (con.):<br><br>. . .<br>Phenacetin, technical . . .<br><br>* * * * *<br>Other:<br>. . .<br>Drugs:<br>. . .<br>Other:<br>Acetophenetidin (Phenacetin). |
| **<u>Figure 10(a):</u>**<br><br>4-acetamido-2-aminophenol<br><br>Chemtall Br. at 44. | 2924.29<br>(con.)<br><br>2924.29.31 | Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof: . . .<br><br>Other (con.):<br>Aromatic (con.):<br><br>. . .<br>4-Acetamido-2-aminophenol; . . . |

| | Heading/ Subheading | |
|---|---|---|
| **<u>Figures 9(b) and 10(f):</u>**<br><br>p-acetamidophenol<br>(a/k/a Acetaminophen)<br><br>Chemtall Br. at 41, 45. | <br><br><br>2924.29<br>(con.)<br><br><br><br><br>2924.29.62 | Cyclic amides (including cyclic carbamates) and their derivatives; salts thereof: . . .<br><br>Other (con.):<br>Aromatic (con.):<br>Other:<br>. . .<br>Drugs:<br>. . .<br>Other:<br>Acetaminophen . . . |

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,598 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). Further, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in a proportionally spaced typeface, Times New Roman, 14 point, using Microsoft Word.

s/Eric E. Laufgraben
Eric E. Laufgraben

CERTIFICATE OF SERVICE

I certify that, on March 23, 2017, I served defendant-appellee's brief on counsel of record by operation of the Court's electronic filing system.

s/Eric E. Laufgraben
Eric E. Laufgraben